## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LAD SERVICES OF LOUISIANA, LLC** | * | **CIVIL ACTION** |
| | * | |
| **Plaintiff** | * | |
| | * | **NO.:** |
| **VERSUS** | * | |
| | * | **SECTION:** |
| | * | |
| **DRAGADOS/HAWAIIAN DREDGING/ORION** | * | |
| **Joint Venture, and DRAGADOS USA, INC.,** | * | **MAGISTRATE** |
| **individually, and HAWAIIAN DREDGING** | * | |
| **CONSTRUCTION COMPANY, INC., individually** | * | |
| **and ORION GOVERNMENT SERVICES, LLC,** | * | |
| **individually** | * | |
| | * | |
| | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### LAD SERVICES OF LOUISIANA, LLC'S
### ORIGINAL COMPLAINT

Plaintiff, LAD Services of Louisiana, LLC files this original complaint against defendants, Dragados/Hawaiian Dredging/Orion Joint Venture, and Dragados USA, Inc.,  and Hawaiian Dredging Construction Company, Inc. and Orion Government Services, LLC, (collectively the "Defendants") and would respectfully show the court as follows:

# I.
# INTRODUCTION

This is a case of breach of contract and/or detrimental reliance and/or unjust enrichment. Defendants contracted with LAD for construction of a floating dry dock to be built at LAD's yard located in the town of Amelia, Assumption Parish, Louisiana; and delivered to and set up in Pearl Harbor, Honolulu, Hawaii. LAD seeks to recover lost profits and other damages resulting from defendants' breach of the contract by contracting with another unknown entity to do the job, after defendants had entered into an agreement with LAD for the dry dock construction. LAD also seeks to recover bad faith damages from the defendants; including, but not limited to, damages pursuant to La. R.S. 15:1401 based on defendants intentional, unfair and deceptive trade practices. Alternatively, LAD seeks to recover damages it sustained from LAD's detrimental reliance on defendants offers and representations; as well as, the unjust enrichment of the defendants.

# II
# PARTIES

1.      Plaintiff, LAD Services of Louisiana, LLC ("LAD") is a Louisiana limited liability company domiciled in St. Mary Parish, with it's principle place of business in Amelia, Assumption Parish, Louisiana.

2.      Defendant, Dragados/ Hawaiian Dredging/Orion Joint Venture ("DHOJV") is a general partnership organized in the State of Hawaii, whose members are Dragados USA, Inc.; Hawaiian Dredging Construction Company, Inc.; and Orion Government Services, LLC, and may be served with process by serving its registered agent, Asdaq Wahid c/o Hawaiian Dredging Construction Company, Inc.,, 605 Kapiolani Boulevard, Honolulu, Hawaii, 96813.

3.    Defendant, Dragados USA, Inc. ("Dragados") is a Delaware corporation organized in the State of Delaware, and may be served with process by serving its registered agent Corporate Service Company, 1003 Bishop Street, Suite 1600, Pauahi Tower, Honolulu, Hawaii, 96813.

4.    Defendant, Hawaiian Dredging Construction Company, Inc., ("Hawaiian Dredging") is an Hawaiian corporation, organized in the State of Hawaii, and may be served with process by serving its registered agent, Joseph P. Majkut, 605 Kapiolani Boulevard, Honolulu, Hawaii, 96813

5.    Defendant, Orion Government Services, LLC ("Orion") is a Washington limited liability company domiciled in Houston, Texas and  may be served with process by serving its registered agent, Corporation Service Company, 300 Deschutes Way SW, Suite 208 MC-CSC1, Tumwater, Washington, 98501

6.    At all relevant times in the matters described herein DHOJV acted through its principles, Dragado USA, Inc., Hawaiian Dredging Construction Company, Inc. and Orion Government Services, LLC;  and their respective officers, agents, employees and representatives who were  engaged by DHOJV  and who acted within the scope of their offices, agencies, employment and representation.

### III
### JURISDICTION AND VENUE

7.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as citizenship of the parties hereto is diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  More particularly, at all times relevant hereto, Plaintiff, LAD, was domiciled in the State of Louisiana and the different defendants are domiciled in Hawaii,  Delaware and Texas.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2)  since the contract was entered into in Assumption Parish, and the vast majority of the work was  to be performed at LAD's facility in Amelia, Assumption Parish,  Louisiana.

**IV**
**FACTUAL BACKGROUND**

9.      Plaintiff, LAD, is a Louisiana limited liability company.   LAD specializes in new barge fabrication, dry dock fabrication, dock side repair, marine salvage and structural fabrication. In addition,

10.      Defendant Dragados USA, Inc, is a wholly owned subsidiary of Dragados, which is one of the largest construction companies in the world.  Dragados specializes in designing and executing  civil infrastructure.

11.      Defendant Hawaiian Dredging Construction Company, Inc. is the largest full service general contractor in the State of Hawaii and is located in Honolulu, Hawaii.

12.      Defendant Orion Government Services, LLC, is a heavy marine construction and civil engineering company founded in Washington and located in Tacoma, Washington.

13.      Defendant Dragados/Hawaiian Dredging/Orion JV is a general partnership organized in Hawaii in June of 2021.  The partners are Dragados USA, Inc., Hawaiian Dredging Construction Company, Inc., Orion Government Services, LLC.  The partnership is located in Honolulu, Hawaii.

14.      DHOJV was formed to pursue a contract with the United States Navy for a 2.8 billion dollar project to build a new Dry Dock 5 to replace Dry Dock 3 at the Pearl Harbor Naval Shipyard.

# V
## FACTUAL ALLEGATIONS

**A.    LAD and DHOJV enter into a contract.**

15.    In early 2023 Dwain Sanders on behalf of the defendants contacted LAD's principle, Lee Dragna, to assist DHOJV in securing the United States Navy ("Navy") contract to replace Dry Dock 3 with Dry Dock 5 at the NAVAFC joint base at Pearl Harbor Hickman Hawaii.

16.    Dwain Sanders on behalf of DHOJV contacted LAD, presumably because LAD's speciality was barge fabrication, and that LAD had a lengthy history of working on military bases. DHOJV asked LAD for recommendations on how to construct and deliver multiple four thousand ton sections of pre–cast concrete units to enlarge the floor of Dry Dock 5, to allow work to be done on the Navy's larger Virginia-Class submarines.

17.    In house engineers for DHOJV had initially proposed and designed a converted deck barge that the flooring units would be constructed on.

18.    In consultation with Lee Dragna of LAD, defendants realized that the deck barge was not a viable option, since the water was too shallow and the concrete floor units could only be constructed one at a time on the deck of the barge. That would not allow DHOJV to meet the time constraints of the Navy's contract.

19.    Mr. Dragna suggested that the flooring units be built on land and then transported to a dry dock for launching. Dwain Sanders agreed stating in a February 5th, 2023 email to Mr. Dragna "It looks very promising using the dry dock method vs retrofit a flat deck barge....."

20.    Mr. Dragna also suggested that self propelled modular transporters (SPMTs) would be the most versatile means of moving the concrete sections onto the dry dock. DHOJV agreed with Mr. Dragna's suggestion, and on information and belief is using SPMTs for this project.

21.     Dwain Sanders on behalf of DHOJV requested that LAD design the dry dock. Pursuant to that request LAD did the preliminary design. LAD had Nautical Design and Consulting Engineers ("Nautical") do the step by step calculations and modeling for the dry dock. LAD presented its design and Nautical's calculations and modeling to Dwain Sanders and DHOJV's principle, Pietro Cerveglieri. DHOJV sent LAD an $8,000 Purchase Order ("P.O.") for that third party engineering. LAD invoiced DHOJV for Nautical Design's costs, but DHOJV failed to reimburse LAD.

22.     In subsequent emails, telephone conversations and team meetings it was discovered that DHOJV had miscalculated the weight requirements due to water depth restrictions. That miscalculation necessitated a redesign to enlarge the dry dock, so it could hold more weight. Pietro Cerveglieri of DHOJV requested that LAD do the redesign.

23.     Mr. Dragna became concerned because LAD had not made the weight miscalculations, but now DHOJV was asking LAD to do the necessary re-engineering to fix DHOJV 's mistake. By that time, LAD had invested substantial resources and incurred significant expenses on the DHOJV dry dock project, and was now being asked to invest further resources and incur additional engineering and other expense. In a phone conversation in early May, 2023 Mr. Dragna expressed this concern to Dwain Sanders. Mr. Sanders assured Mr. Dragna that LAD had the job , and told him "don't worry, you're our guy and you're going to do this job". Mr. Sanders said nothing about a requirement that the agreement between LAD and DHOJV be in writing, before it was binding. Neither Pietro Cerveglieri, nor any other representative of DHOJV told LAD that the agreement between LAD and DHOJV would only be binding when reduced to writing.

24.    Based on that conversation with Dwain Sanders, and other representations by DHOJV,  Mr. Dragna reasonably believed that LAD had an agreement with the defendants for LAD to build  a dry dock in Amelia, Louisiana;  deliver and set up the dry dock  in Pearl Harbor, Hawaii.

25. LAD did the requested  redesign, and had Nautical Design recalculate and model the new design.  Subsequently, DHOJV requested a quote from LAD.  LAD submitted the quote.  DHOJV then requested a payment schedule.  LAD submitted a payment schedule.

26.    On or about October 11, 2023 DHOJV sent LAD a Purchase Order which set out the terms of the dry dock agreement between LAD and DHOJV.

27.    DHOJV's request for the redesign, request for a  price, its request for a  payment schedule and LAD's receipt of the P.O. further assured Mr. Dragna that LAD had an agreement with DHOJV for the dry dock job construction..

28.    DHOJV's  P.O. requested that LAD secure a bond in amount of $14,000,000.00.  LAD secured that bond based on the assurance that LAD had the DHOJV dry dock job. LAD even agreed to the unusual request by DHOJV that it be given the option of purchasing the dry  dock outright for $25,000,000.00  or have LAD buy back the dry dock at the completion of the job for $10,532.000.00.

29.    At no time did anyone from DHOJV advise Mr. Dragna that the contract between LAD and DHOJV would only be effective when it was reduced to writing.

30.    At no time did anyone from DHOJV advise Mr. Dragna that LAD was not getting the dry dock job, and that contract had been given to someone else.

31.    LAD was and is ready to construct, deliver and set up the dry dock for DHOJV in Pearl Harbor, Hawaii.

32.     During the months of discussion between them DHOJV had explained to LAD that time was of the essence for the contract between them; as well as, emphasizing the time constraints of the Navy contract.  LAD understood that; put other work on hold, and moved with haste to get ready to do the job for DHOJV.  In addition to the above mentioned work for DHOJV, LAD contacted its agent in Panama to make arrangements for an expedited passage through the Panama Canal, as the Canal was experiencing lengthy delays at the time.

33.     During the months of discussions between LAD and DHOJV LAD had been contacted by Crosby Marine Services for LAD to construct a new 400 x 120 x 25 foot barge.  In order to meet the time constraints and deadlines of the DHOJV dry dock job, LAD was forced to turn down the Crosby job.

## VI
## CLAIMS FOR RELIEF

**A.      First Cause of Action - Breach of contract**

34.     At all times relevant hereto Dwain Sanders had authority to bind the defendants in a contract with LAD. Therefore, defendants are liable for the acts and/or omissions of Dwain Sanders which form the basis of this litigation.

35.     An offer was made by Dwain Sanders on behalf of the defendants to have LAD build and deliver a dry dock to Pearl Harbor in Hawaii.  That offer was accepted by LAD and reduced to writing in the form of a P.O., that set out the terms of the agreement between them.  There was a valid enforceable contract between LAD and DHOJV.  The P.O. was not signed, but that does not revoke the agreement, because there was no requirement for a written contract.

36.     The offer by DHOJV ("don't worry, you're our guy and you're going to do this job") was accepted by LAD.  There was an agreement as to the thing - floating dry dock, and there was an agreement as to the  price , resulting in a valid binding and enforceable contract between LAD and DHOJV.

37.     LAD was fully performing its obligations under the contract and satisfying all DHOJV requirements, including strict time constraints and deadlines by completing all  tasks requested by DHOJV - initial design, redesign, quote, payment time line, securing a $14,000,000.00 bond and securing priority passage through the Panama Canal.

38.     After months of being told that it had the job and LAD performing all obligations required, DHOJV gave the job to another unknown entity.

39.      For reasons completely unknown to plaintiff defendants breached the contract that had been offered to and accepted by LAD.  Defendants' breach of contract was an act performed in bad faith.  As a result of defendants' breach of contract, plaintiff LAD is entitled to recover damages, including but not limited to :

|   |   |   |
|---|---|---|
| a. | loss of profits from the DHOJV this contract | $11,200,000 |
| b. | loss of profits for a barge construction contract which plaintiff had to forego | $10,000,000 |
| c. | costs and expenses of LAD's employees' time and effort expended on this project | $82,000 |
| d. | expenses and invoices that have not have not been paid | $8,000 |
| e. | cost to obtain the bond | $26,000 |
| f. | legal fees and cost and other damages as shall be proven at the trial on the merits  of this action | |

g.    any and all other relief which this Honorable Court deems appropriate and equitable under the circumstances

**B.    Second Cause of Action - Bad Faith Breach**

40.    Paragraphs 1 through 39 above are incorporated by reference.

41.    The breach of contract by DHOJV was intentional and in bad faith, entitling LAD to bad faith damages.

42.    DHOJV held out in front of LAD the carrot of being awarded the dry dock job in order to obtain from and use LAD's resources to enable DHOJV to secure the Navy contract.

43.    After bleeding LAD, and being awarded the navy contract, DHOJV did the bait and switch and awarded the dry dock job to another unknown entity.

**C.    Third Cause of Action - Deceptive Trade Practices**

44.    Paragraphs 1 through 43 above are incorporated by reference.

45.    DHOJV's breach of contract was intentional, unfair and deceptive as set out in La. R.S. 15:1401 et seq; entitling LAD to additional damages, statutory penalties and attorney's fees.

**D.    Fourth Cause of Action - Detrimental Reliance**

46.    Paragraphs 1 through 45 above are incorporated by reference.

47.    Defendants expected plaitniff LAD to rely upon the contract offered to accepted by petitioner.

48.    At all times relevant hereto it was reasonable for plaitniff LAD to rely upon the contract that was offered by the defendants.

49.    Louisiana Civil Code article 1967 states, in pertinent part, "a party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in relying."

50.     "The detrimental reliance theory is a general part of the Civil Law and springs forth from the idea that in a civil society people should keep their word." *Bains v. YMCA,* 969 So.2d 646, 650 (La. App. 4 Cir. 10/3/07).

51.     Relying upon the contract it had been offered LAD invested substantial sums and LAD resources to further the project.  Defendants were aware of and expected this of LAD.

52.     Relying upon the contract it had been offered and the time restraints that the contract demanded, LAD was unable to enter into one or more construction contracts for new barges; including but not limited to, a $25,000.000.00 contract to construct a new 400 x 120 x 25 foot barge for Crosby Marine Services, resulting in a substantia  loss of profit as LAD's typical loss of profit on a barge this size is 40%.

53.     LAD seeks recovery of all damages incurred as a result of its detrimental reliance on the defendants.

**D.     Fifth Cause of Action - Unjust Enrichment**

54.     Paragraphs 1  through 53  are incorporated  by reference.

55.     Plaintiff, LAD, provided and secured  valuable services to the defendants, for which plaintiff has not been compensated; including, but not limited to advice, assistance, recommendations,engineering and design services.  DHOJV used LAD to obtain the Navy contract, but has failed to compensate LAD  or even reimburse LAD.

56.     Defendants are therefore liable to plaintiff pursuant to Louisiana Civil Code Art. 2298, which provides, in pertinent part, "a person who has been enriched without cause at the expense of another person is bound to compensate that person".

57.     LAD seeks to recover actual damages, consequential damages, punitive damages, incidental damages, reasonable attorney's fees and costs incurred from the defendants jointly, separately and in solido.

## VII
## CONDITIONS PRECEDENT

58.     LAD has performed all conditions precedent.

## VIII
## JURY REQUEST

59.     Plaintiff, LAD, requests trial by jury.

## IX
## PRAYER

Plaintiff, LAD, respectfully requests that Defendants, Dragados/Hawaiian Dredging/Orion Joint Venture, Dragados USA, Inc., Hawaiian Dredging Construction Company, Inc., and Orion Government Services, LLC, be cited to appear and answer, and that on final trial hereof, LAD have judgment against Defendants, jointly and severally, for the following:

      a.     An award of actual damages, consequential damages, and punitive damages;

      b.     Reasonable and necessary attorney's fees;

      c.     Cost of court;

      d.     Prejudgment and post-judgment interest at the maximum rate allowable by law; and

      e.     Such other and further relief at law or in equity to which LAD may be justly entitled.

Respectfully submitted,

**CREED LAW FIRM**

**By:**  s/Richard Creed, Jr.
     Richard Creed, Jr.
     Bar Roll No.: 04593
     CREED LAW FIRM
     8017 Jefferson Highway
     Suite B3
     Baton Rouge, Louisiana 70809
     Telephone: (225) 926-3824
     Facsimile : (225) 926-0404
     Email: lawyercreed@gmail.com