## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LAD SERVICES OF LOUISIANA, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No.: 2:24-cv-02446-WBV-DPC** |
| | ) | |
| **v.** | ) | **Judge Wendy B. Vitter** |
| | ) | |
| **DRAGADOS/HAWAIIAN** | ) | **Magistrate Donna Phillips Currault** |
| **DREDGING/ORION, JOINT VENTURE** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT DRAGADOS/HAWAIIAN DREDGING/ORION, JOINT VENTURE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

Defendant Dragados/Hawaiian Dredging/Orion, Joint Venture ("DHO"), by and through counsel, submits this Memorandum in Support of the Motion to Dismiss requesting that the Court (a) dismiss pursuant to Federal Rule 12(b)(6), the Sixth Cause of Action recently added through Plaintiff LAD Services of Louisiana, LLC's Fourth Amended Complaint and styled as "Misappropriation of Trade Secrets," for failure to state a claim upon which relief may be granted; and (b) dismiss pursuant to Federal Rule 12(b)(2), Plaintiff LAD Services of Louisiana, LLC's Fourth Amended Complaint in the entirety due to a lack of specific personal jurisdiction over DHO.

In the event the Court denies DHO's request to dismiss the Fourth Amended Complaint in the entirety, DHO requests, pursuant to 28 U.S.C. § 1404, that the Court grant DHO's Motion to Transfer, and thereby transfer the lawsuit to the U.S. District Court for the District of Hawaii.

1

I.    **INTRODUCTION**

The Fourth Amended Complaint filed by LAD Services, of Louisiana, LLC ("LAD") introduces a new cause of action styled as "Sixth Cause of Action – Misappropriation of Trade Secrets." *See* LAD's Fourth Amend. Compl., p. 12. DHO requests that the Court dismiss LAD's "Sixth Cause of Action" pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be granted. LAD has failed to adequately plead any actionable cause of action allegedly based on an undefined trade secret issue. The general and overly broad allegations are so insufficient as to require a dismissal of this cause of action in the entirety.

Regarding the issue of personal jurisdiction, LAD initiated the instant lawsuit in the U.S. District Court for the Eastern District of Louisiana, naming Defendant Dragados/Hawaiian Dredging/Orion, Joint Venture ("DHO") as the only party defendant. The Fourth Amended Complaint filed by LAD alleges that "jurisdiction" is satisfied "pursuant to 28 U.S.C. § 1332," *i.e.*, diversity of citizenship as between LAD and DHO. *See* LAD's Fourth Amend. Compl., ¶ 4. Regarding DHO, LAD states that DHO "is a general partnership organized and domiciled in the State of Hawaii, with its principle [sic] place of business in Honolulu, Hawaii[.]" *Id*. Concerning venue, LAD alleges that venue is valid in this Court "since the contract was entered into in Assumption Parish, and the vast majority of the work was to be performed at LAD's facility in Amelia, Assumption Parish, Louisiana." *See* LAD's Fourth Amend. Compl., ¶ 5.

Despite LAD's broad assertions, DHO requests that the Court dismiss the lawsuit in the entirety pursuant to Federal Rule 12(b)(2). DHO is registered to transact business as a general partnership under the laws of the State of Hawaii, maintains a local office in Hawaii, and identifies its principal place of business as Costa Mesa, California. DHO is not licensed nor registered to transact business in the State of Louisiana, and it does not maintain any office in Louisiana.

Regarding performance, DHO is performing work in Hawaii and it does not retain any employees or labor force in Louisiana. Finally, no contract was entered into by and between DHO and LAD. In sum, DHO has no business or personal ties to the State of Louisiana that would satisfy any minimum contacts standard.

In the event the Court denies DHO's Motion to Dismiss, DHO requests that the Court transfer the lawsuit to the U.S. District Court for the District of Hawaii. For numerous reasons that shall be discussed, the "interest of justice" dictates that the State of Hawaii is the proper venue for any dispute between LAD and DHO.

## II.    BACKGROUND

In late 2022, DHO began contacting potential subcontractors to discuss relevant experience and capabilities surrounding certain floating dry dock work necessary for the overall construction and replacement of Dry Dock No. 3 at Joint Base Pearl Harbor Hickam, Hawaii (the "Project"). The scope at issue concerned two primary elements of work. First, DHO was in need of subcontractor support to transport Precast Floor Units ("PFU"), each made of concrete and weighing approximately 4,600 tons, from the Project's staging area on the Waipio Peninsula within Pearl Harbor to a waiting floating dry dock. The Project's staging area on the Waipio Peninsula is situated across the Pearl Harbor channel from the Dry Dock No. 3 site. Since the Waipio Peninsula staging area sits across the Pearl Harbor channel from the Dry Dock No. 3 site, DHO also needed subcontractor support to transport the PFUs over the water in the harbor to the Dry Dock No. 3 site. Once the PFUs were floated in the proximity of the Dry Dock No. 3 site *via* the floating dry dock, the PFUs were to be maneuvered into place within the dry dock site and carefully lowered down to the seabed utilizing a gantry crane and ballast system. When lowered into place,

the PFUs constitute the "basement" of the newly constructed, permanent dry dock. Thus, DHO needed a single subcontractor or multiple subcontractors that could perform this specialized work.

Given the complexities and numerous variables involved with this important scope of work, DHO personnel communicated with more than a single subcontractor about the possible ways to perform the work. As the result, DHO contacted various parties to explore ideas and possible subcontracting parties, while discussing proposed methods, potential pricing, and estimated timing. LAD was among the parties contacted by DHO. In addition to LAD, DHO had discussions with Pacific Shipyard International, LLC, Marisco, Ltd., and Gunderson Marine & Iron, about the transporting and placement of the PFUs. Regarding the land transport scope of work, DHO spoke with Mammoet, Sarens, Berard, and Fagioli, among other subcontractors with extensive experience concerning heavy lift and transport work. All of these entities were experienced contractors in their respective fields.

The discussions between DHO and LAD were all done at an arms-length basis through e-mails and other electronic communications. The Marine Manager for DHO, Mr. Dwain Sanders, did not travel to Louisiana to meet with LAD representatives. *See* Exhibit 1, Declaration of D. Sanders, ¶¶ 3-6. As part of the preliminary discussions between DHO and LAD, DHO transmitted a draft purchase order form containing general terms and conditions for LAD's initial review and revision in October 2023. *See* Exhibit 1 to DHO's Supp. Memo. (Dkt. 62-1); Exhibit 2, Declaration of M. Morejon, ¶¶ 6-7. The draft purchase order form transmitted in October 2023 did not contain finalized terms, did not include any signatures, did not direct the performance of any work by LAD, and was transmitted with the clear intent of being presented as a draft for review and consideration. *See* Exhibit 1 to DHO's Supp. Memo. (Dkt. 62-1). In response, LAD reviewed and revised the draft purchase order form. *See* Exhibit 1 to DHO's Unopposed Mot. for Leave to

Submit Additional Exhibit (Dkt. 54-1).  After preparing its revisions to the draft form, LAD transmitted the revised draft purchase order form back to DHO for DHO's review on November 2, 2023.  *See* Exhibit 1 to DHO's Unopposed Mot. for Leave to Submit Additional Exhibit (Dkt. 54-1); Exhibit 2, Declaration of M. Morejon, ¶¶ 14-15.  Importantly, these communications do not reflect that DHO or LAD considered the purchase order form as any final agreement.

At no time did DHO and LAD enter into any contractual agreement for the potential work. Instead, DHO and LAD engaged in preliminary discussions concerning the potential scope, price, and timing for any floating dry dock work.  As part of the discussions, DHO transmitted a copy of its standard purchase order form in draft to LAD.  The transmission of this document clearly reflected that the purchase order form was a draft intended to provide a basis for further discussion and negotiation.  Importantly, DHO was having discussions with other potential subcontractors in 2023.  Upon receipt and review of the draft form, LAD made proposed revisions to DHO's draft form and transmitted the proposed revisions back to DHO for consideration on November 2, 2023.

Beyond preliminary discussions concerning experience and potential means and methods, DHO did not direct, oversee, or accept any work or services allegedly performed by LAD for use by DHO on the Project.  *See* Exhibit 1, Declaration of D. Sanders, ¶ 7.  In particular, LAD never mobilized or performed any work at the Project site.  *See* Exhibit 1, Declaration of D. Sanders, ¶ 10.  Thus, LAD did not convey any benefit upon the DHO or the Project.  At the same time, DHO did not derive any benefit from LAD in connection with the preliminary discussions between the parties.  Accordingly, DHO did not issue any payment to LAD for any alleged work or services. *See* Exhibit 1, Declaration of D. Sanders, ¶ 11; Exhibit 2, Declaration of M. Morejon, ¶ 19.

Ultimately, DHO determined that Gunderson Marine & Iron, a separate subcontractor already designated by DHO to construct the caisson of the new dry dock, provided a better, overall

value for the marine transport and placement of the PFUs. Critically, and unlike LAD, DHO recognized that Gunderson Marine & Iron would not be forced to traverse the Panama Canal with any intended vessel, which was a concern for DHO. DHO determined that Gunderson Marine & Iron could perform the work at a better price and without some of the logistical challenges that would impact LAD's involvement, thereby providing a better overall value for the floating dry dock work.

Also, LAD inherently lacked the capabilities to transport the PFUs on land. While LAD initially suggested that it could include and coordinate the land-based transport services, DHO later determined that it was better to address the land transport scope directly with an experienced heavy-lift subcontractor, thus avoiding any issues with LAD's attempt to perform this critical element of the work. As the result, DHO entered into a separate agreement with Mammoet for the land transport.

Ultimately, DHO entered into an agreement with Mammoet to perform the land transport, final maneuvering, and lowering of the PFUs. Gunderson Marine & Iron would fabricate, deliver, and operate the floating dry dock. At no time did DHO provide Gunderson Marine & Iron, Mammoet, or any other party, with any unique design information derived from the preliminary discussions between DHO and LAD. *See* Exhibit 1, Declaration of D. Sanders, ¶ 12-13.

When notified of DHO's decision to cease discussions, LAD immediately threatened legal action. LAD subsequently initiated the current lawsuit naming DHO as the party defendant, and the Fourth Amended Complaint alleges that jurisdiction is satisfied through diversity of citizenship as between LAD and DHO.[1] In response, DHO submits this Motion to Dismiss or, In the Alternative, Motion to Transfer Venue, requesting the dismissal of LAD's Sixth Cause of Action;

---

[1] LAD's Fourth Amended Complaint is the current operative complaint.

dismissal of the entire lawsuit based on a lack of personal jurisdiction; and, in the alternative, transfer of the lawsuit to the U.S. District Court for the District of Hawaii.

## III.  LAD'S SIXTH CAUSE OF ACTION, "MISAPPROPRIATION OF TRADE SECRETS," MUST BE DISMISSED

### A.  Standard for Dismissal for Failure to State a Claim for Relief (FRCP 12 (b)(6)).

A motion to dismiss under Rule 12(b)(6) may be granted when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While the Court must accept all well-pleaded facts as true, "the court is not bound to accept as true legal conclusions couched as factual allegations." *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021 WL 2142466, at *2 (E.D. La. May 26, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  As such, the standard demands more than "naked assertion[s]" devoid of "further factual enhancement" or "formulaic recitation of the elements of a cause of cause action." *Twombly*, 550 U.S. at 555, 557.  If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

### B.  The Sixth Cause Of Action In LAD's Fourth Amended Complaint, Alleging "Misappropriation Of Trade Secrets," Fails To State A Claim Upon Which Relief Can Be Granted.

To state a claim under the Defend Trade Secrets Act of 2016 ("DTSA"), LAD must allege: (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. *Complete Logistical Servs., LLC v. Rulh*, 350 F.Supp.3d 512, 517 (E.D. La. 2018) (citing 18 U.S.C. § 1836(b)(1)).  Similarly, to recover damages under the Louisiana Uniform Trade Secrets Act ("LUTSA"), codified at LSA-R.S. 51:1431 through 51:1439, LAD must prove: (1) the

existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) actual loss caused by the misappropriation. *Source Prod. & Equip. Co., Inc. v. Schehr*, No. 16-17528, 2017 WL 3721543, *5-6 (E.D. La. Aug. 29, 2017).

Here, LAD's claim fails because LAD has not adequately pled the threshold issue for any trade secret claim – the existence of an actual trade secret. Because LAD's claim fails to establish this threshold issue, DHO need not address the other failings of LAD's pleading.

C.   **Because LAD Did Not Adequately Define Its Alleged Trade Secret, LAD Cannot Meet the First Element Of Its Trade Secret Claim And Dismissal Is Warranted.**

While the definition of a trade secret is broad, a plaintiff pursuing trade secret claims "must put a finer point on their allegations." *Am. Biocarbon, LLC v. Keating*, No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020) ("to allege a trade secret, the plaintiff must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'") (quoting *Navigation Holdings, LLC v. Molavi*, 445 F.Supp.3d 69, 75 (N.D. Cal. 2020)). As with pleadings generally, a plaintiff's trade secret allegations cannot rely on "broad conclusory statements." *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021 WL 2142466, at *3 (E.D. La. May 26, 2021). A plaintiff must identify the "particular trade secrets [that it] has a basis to believe actually were misappropriated." *Id*. As such, "a plaintiff may ***not*** 'set out its purported trade secrets in broad, categorical terms,' in a way that is merely descriptive of the types of information that generally may qualify as protectable trade secrets…." *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021 WL 2142466, at *2 (E.D. La. May 26, 2021) (emphasis

added) (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-6930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)).

LAD describes the alleged trade secret(s) as: "structural specifications, engineering drawings, technical calculations, materials specifications, innovative features, dimensional requirements, load capacity calculations, and other proprietary engineering solutions." LAD's Fourth Amend. Compl. ¶ 55. LAD does not define any trade secrets with any particularity, and instead relies on vague, broad, and generalized categories such as "specifications," "features," "calculations." As so vaguely pled, DHO cannot reasonably determine what trade secrets LAD alleges have misappropriated let alone "ascertain at least the boundaries within which the secret lies." *Am. Biocarbon, LLC v. Keating*, No. 20-00259, 2020 WL 7264459, at *5 (M.D. La. Dec. 10, 2020) (citation omitted).

Furthermore, LAD claims that this definition of the trade secret is without limitation. *See* LAD's Fourth Amend. Compl. ¶ 55 (stating the Design "included but was not limited to . . . ."). As the court noted in *Am. Biocarbon, LLC*, "courts do not hesitate to dismiss" such unbounded allegations of trade secrets. 2020 WL 7264459, at *4 (dismissing trade secret claim because plaintiff's "conclusory allegations fall well short of the particularity standard necessary to separate its alleged trade secret(s) from matters of general knowledge in [its] industry or of special persons who are skilled in the trade."). Additionally, LAD claims that it had "Nautical Design recalculate and model the new design, representing additional propriety technical work and trade secretary [sic] information." *See* LAD's Fourth Amend. Compl. ¶ 65. Not only is this "additional propriety technical work" vague and undefined, but it also makes it unclear who indeed owns the alleged trade secrets – LAD or Nautical Design?

For the foregoing reasons, LAD's trade secret claim must be dismissed. *See Am. Biocarbon, LLC*, 2020 WL 7264459 at *4–5.

## IV.    THE COURT LACKS PERSONAL JURISDICTION OVER DHO

### A.  Standard for Dismissal for Lack of Personal Jurisdiction (FRCP 12(b)(2)).

Federal Rule 12(b)(2) allows for the dismissal of a lawsuit based on a movant's challenge to the existence of personal jurisdiction.[2]  When reviewing a motion to dismiss invoking Federal Rule 12(b)(2) and arguing a lack of personal jurisdiction, the court is required to review whether minimum contacts have been established under Louisiana's long-arm statute.  More specifically, the Fifth Circuit has explained,

> "The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citations omitted). For a federal court to exercise personal jurisdiction over nonresident defendants, it must first determine the defendants have "purposefully established 'minimum contacts' with the forum state and, if so, that entertainment of the suit against the nonresident[s] would not offend 'traditional notions of fair play and substantial justice.'" *E.g.*, *Bullion*, 895 F.2d at 216 (5th Cir. 1990).

*Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).

The uncontroverted allegations in a plaintiff's complaint are to be taken as true when the court considers a motion to dismiss arguing a lack of personal jurisdiction.  *Deep South Communications, LLC v. Fellegy*, 652 F.Supp.3d 636, 651 (M.D. La. 2023) (citing *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).  However, if alleged facts are disputed, "the party who seeks to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the

---

[2]  Even if the Court denies the request to dismiss the Sixth Cause of Action in LAD's Fourth Amended Complaint for failure to state a claim upon which relief may be granted, the entire Fourth Amended Complaint remains subject to dismissal under Federal Rule 12(b)(2) based on a lack of personal jurisdiction.

court." *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). Thus, when a nonresident defendant seeks dismissal based on a lack of personal jurisdiction through Federal Rule 12(b)(2), the plaintiff, *i.e.*, LAD, bears the burden of proof to demonstrate that personal jurisdiction has been satisfied. *Herman*, 730 F.3d at 464. The plaintiff must establish enough "minimum contacts" with the current forum to assert either general or specific personal jurisdiction. *See, e.g., Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Absent such a showing, the complaint is subject to dismissal pursuant to Federal Rule 12(b)(2).

**B.    This Court Cannot Exercise General Or Specific Personal Jurisdiction Over DHO.**

A court has general jurisdiction over a nonresident defendant when the defendant's activities within the forum are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952). However, a corporation or other business entity may only be subject to a court's general jurisdiction if its contacts are "continuous and systematic," and thus the contacts are of such magnitude so as to consider the party to be "fairly regarded as at home" in the subject forum. *Torsh Inc. v. Audio Enhancement, Inc.,* 661 F.Supp.3d 596, 600 (E.D. La. 2023). As the result, it can be difficult to establish general jurisdiction over a business entity in a forum other than the place of incorporation or the principal place of business. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2022). In the matter *sub judice*, DHO has no ongoing ties to Louisiana that would satisfy general personal jurisdiction. More importantly, LAD has not alleged, nor can it articulate, any ongoing ties between DHO and the State of Louisiana. Because Louisiana is not DHO's state of origin, principal place of business, or primary business center, general personal jurisdiction cannot be exercised. *See Croom v. Bristow Group, Inc.*,, No. 2:23-cv-5092, 2024 WL 4542503, at *3 (E.D. La. Oct. 22, 2024).

Regarding specific personal jurisdiction, a plaintiff's claim "must arise out of or relate to the defendant's contacts with the forum." *Croom*, 2024 WL 4542503 at *3. In order to establish specific personal jurisdiction over a nonresident defendant in Louisiana, the Fifth Circuit has articulated a three-step test to determine whether "specific personal jurisdiction"[3] can be satisfied:

    (1)    whether the defendant has minimum contacts with the forum states, *i.e.*, purposefully availed itself of the privileges of conducting activities there ("minimum contacts");

    (2)    whether the plaintiff's cause of action arises out of results from the defendant's forum-related contacts ("relatedness"); and

    (3)    whether the exercise of personal jurisdiction is fair and reasonable ("reasonableness").

*Croom*, 2024 WL 4542503, at *3 (citing *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020)). As explained in this Motion, the elements for exercising specific personal jurisdiction over DHO in Louisiana have not been satisfied and cannot be satisfied. Specifically, there are no "minimum contacts" between DHO and the State of Louisiana.

### 1.    DHO has no minimum contacts to Louisiana.

DHO is a general partnership registered to transact business in the State of Hawaii, with a business address of 605 Kapiolani Boulevard, Honolulu, Hawaii 96813. DHO's principal place of business, as designated by agreement, is located in Costa Mesa, California. DHO was created for the purpose of pursuing shipyard infrastructure work with NAVFAC Pacific in Hawaii, Washington, and other geographic areas under the purview of NAVFAC Pacific. As the result of DHO's efforts, DHO was awarded Task Order No. N6274223F4007 under Contract N62742-22-

---

[3] "Specific jurisdiction" is "confined to adjudication of 'issues deriving from or connected with, the very controversy that establishes jurisdiction.'" *Torsch Inc. v. Audio Enhancement, Inc.*, 661 F.Supp.3d 596, 600 (E.D. La. 2023) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)).

D-1311, for the construction and replacement of Dry Dock No. 3 at Joint Base Pearl Harbor Hickam, Hawaii.

DHO is performing work in Hawaii pursuant to the Task Order that DHO entered into with NAVFAC Pacific, dated March 10, 2023. DHO does not perform work nor maintain any offices in Louisiana. Therefore, any minimal contacts that occurred between DHO and LAD were in the form of brief telephonic conversations and electronic communications (video conference/email) between a LAD representative and a DHO representative, to include Mr. Dwain Sanders and Mr. Manuel Morejon. The contacts between LAD and DHO concerned LAD's capabilities relative to a specific scope within the overall scope of the Project. Ultimately, it was determined that LAD was not a suitable party to perform the requisite work on the Project. This is confirmed by the lack of any purchase order agreement being finalized and executed by the parties. Thus, DHO has no ongoing or specific ties to Louisiana.

LAD has affirmed these facts, stating at paragraph 4 of the Fourth Amended Complaint that "[a]t all times relevant hereto[,] DHOJV is a general partnership organized and domiciled in the State of Hawaii, with its principle [sic] place of business in Honolulu, Hawaii." *See* LAD's Fourth Amend. Compl., ¶ 4. LAD admits that DHO maintains offices and operates in Hawaii. Beyond identifying DHO's operations in Hawaii, the Fourth Amended Complaint does not identify any actions by DHO that would satisfy DHO's minimum contacts for the specific personal jurisdiction test discussed in *Croom*. Again, the test is whether DHO has minimum contacts, not whether LAD has minimum contacts. Accordingly, the Fourth Amended Complaint fails to articulate any "substantial" or "continuous and systematic" contacts or ties that DHO has to the State of Louisiana.

The reason for LAD's failure to provide any supporting facts in the Fourth Amended Complaint is simply there are no facts in existence that LAD can cite in order to satisfy minimum contacts.  DHO is not organized in Louisiana and is not registered to conduct business in Louisiana.  DHO holds no assets in Louisiana, and DHO does not maintain any offices in Louisiana.  There are no DHO employees or labor situated in Louisiana.  In sum, DHO is not conducting any business activities in Louisiana.

While LAD's Fourth Amended Complaint fails to establish the existence of any minimum contacts, LAD confirms that no DHO work was been performed in Louisiana, stating that "the vast majority of the work *was to be performed* at LAD's facility in Amelia, Assumption Parish, Louisiana."  *See* LAD's Fourth Amend. Compl., ¶ 5 (emphasis added).  This plain language of the Fourth Amended Complaint confirms that no "work" had yet been performed in Louisiana.  Instead, LAD clearly references future work, verifying that the purchase order form had not been finalized and confirming that no "work" had yet been directed by DHO.

In previous submissions, LAD argues that the existence of a draft purchase order form somehow evinces a binding agreement between the parties.  However, this argument has been debunked.  DHO, through Mr. Manuel Morejon, transmitted a draft purchase order form containing general terms and conditions for LAD's initial review and revision in October 2023.  *See* Exhibit 1 to DHO's Supplemental Memorandum (Dkt. 62-1); Exhibit 2, Declaration of M. Morejon, ¶ 5. This draft form was not an offer, as Mr. Morejon did not have unilateral authority to enter into any subcontract with LAD.  *See* Exhibit 2, Declaration of M. Morejon, ¶ 12.  Moreover, the draft purchase order form transmitted to LAD in October 2023 did not contain finalized terms, did not include any signatures, did not direct the performance of any work by LAD, and was transmitted with the clear intent of being presented as a draft for initial review and discussion.  *See* Exhibit 1

14

to DHO's Supplemental Memorandum (Dkt. 62-1); Exhibit 2, Declaration of M. Morejon, ¶¶ 9-10.  In response, LAD reviewed and significantly revised the draft purchase order form, specifically seeking to eliminate the flowdown provisions of the Federal Acquisition Regulation ("FAR").  *See* Exhibit 1 to DHO's Unopposed Mot. for Leave to Submit Additional Exhibit (Dkt. 54-1); Exhibit 2, Declaration of M. Morejon, ¶ 15.  After preparing its revisions to the draft form, LAD transmitted the revised draft purchase order form back to DHO for review on November 2, 2023.  *See* Exhibit 1 to DHO's Unopposed Mot. for Leave to Submit Additional Exhibit (Dkt. 54-1); Exhibit 2, Declaration of M. Morejon, ¶ 14.  Importantly, these communications and exchanging of drafts confirm that DHO and LAD considered the purchase order form nonbinding and open for ongoing consideration and discussion.  *See J. Caldarera & Co., Inc. v. Louisiana Stadium & Exposition Dist.*, 750 So.2d 284, 288 (La.App. 5 Cir. 12/15/99) (when the parties failed to have a meeting of the minds, consent was absent and there is no contract).  Thus, there was never any agreement finalized between DHO and LAD through the draft purchase order form.

LAD, as the plaintiff, has not demonstrated and cannot demonstrate that DHO's activities satisfy the "minimum contacts" requirement necessary to satisfy (general or) specific personal jurisdiction in Louisiana.  It would be inequitable to subject DHO to personal jurisdiction in this Court given the lack of contact between DHO and the State of Louisiana.  In sum, the "minimum contacts" requirement for specific personal jurisdiction cannot be satisfied between DHO and the State of Louisiana.

## 2.    LAD incorrectly relies on its own ties to establish personal jurisdiction.

In an effort to establish personal jurisdiction, LAD relies on its own contacts instead of DHO's activities.  Specifically, paragraph 4 of the Fourth Amended Complaint discusses LAD's corporate status in Louisiana and its principal place of business located in St. Mary Parish,

Louisiana. *See* LAD's Fourth Amend. Compl., ¶ 4. Seemingly in recognition of the lack of jurisdictional ties extending from DHO, LAD attempts to rely on its ties to Louisiana to establish personal jurisdiction, and not any purported ties on the part of DHO.

LAD's attempt to satisfy jurisdiction in Louisiana through its own ties fails to establish the requisite jurisdictional nexus to compel DHO to be subjected to litigation in Louisiana. Simply because LAD may have ties to Louisiana does not satisfy the elements necessary to exercise specific personal jurisdiction recently discussed in *Croom*, *i.e.*, minimum contacts, relatedness, and reasonableness. *See Croom*, 2024 WL 4542503 at *3.

Again, no work was performed by DHO or performed at the direction of DHO that can be used to establish any ties to Louisiana. The Fourth Amended Complaint even alleges that the *future* work that may be required under an eventual agreement "was to be performed" in Louisiana; not that work was performed or remains ongoing in Louisiana. *See* LAD's Fourth Amend. Compl., ¶ 5 (emphasis added). While LAD alleges without any supporting facts that *future* work was to have been performed in Louisiana, no work was performed at the direction of DHO and/or pursuant to any purchase order agreement between DHO and LAD.

DHO does not have the requisite nexus to Louisiana to satisfy personal jurisdiction. The Court's inability to exercise personal jurisdiction over DHO is rooted in the reality that DHO has no ties to Louisiana. On this particular point, there can be no dispute, and dismissal of the lawsuit is warranted pursuant to Federal Rule 12(b)(2).

       **3.**      **Requiring DHO to be subjected to jurisdiction in Louisiana would be unfair and unreasonable.**

The third element of the test to establish specific personal jurisdiction articulated in *Concrete Materials* is whether the exercise of jurisdiction is fair and reasonable. Regarding this element, DHO unequivocally states that requiring DHO to be subjected to jurisdiction in Louisiana

would be inequitable and unreasonable under the circumstances. For the numerous reasons articulated herein, DHO has no ties to Louisiana and did not contemplated being haled into court in Louisiana. Thus, forcing DHO to divert significant resources to defend itself in a state where it does not transact any business would be unreasonable.

## V.    IN THE ABSENCE OF DISMISSAL OF THE FOURTH AMENDED COMPLAINT IN THE ENTIRETY, THE LAWSUIT SHOULD BE TRANSFERRED TO HAWAII

### A.    Legal Standard To Transfer Venue.

Pursuant to 28 U.S.C. § 1404(b), a movant may seek to transfer an existing lawsuit to a different venue through a submitted motion. Upon the submission of a motion seeking to transfer, a plaintiff has the burden of proving that the chosen venue is proper when faced with a challenge by an opposing party. *Broussard v. First Tower Loan, LLC*, 135 F.Supp.3d 540, 544 (E.D. La. 2015) (citing *Smith v. Fortenberry*, 903 F.Supp. 1018, 1020 (E.D. La. 1995)). The court in *Broussard* further articulated,

> Even when the plaintiff files suit in a proper venue, the district court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The movant has the burden of showing that an alternative forum is more appropriate for the action. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("Volkswagen II"). "The plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed." *Carpenter v. Parker Drilling Offshore USA, Inc.*, No. 05–265, 2005 WL 1432373, at *1 (E.D. La. June 16, 2005). Therefore, to overcome the plaintiff's choice of venue, the movant must show "good cause" for the transfer. *Volkswagen II*, 545 F.3d at 315. Good cause for the transfer exists when the transferee venue is clearly more convenient than the plaintiff's chosen venue. *Id.* In such a case, the court should grant the motion to transfer. *Id.*

*Broussard*, 135 F.Supp.3d at 544. Thus, this Court has the authority to transfer the current lawsuit and the existing facts demonstrate that a transfer is appropriate.

The factors that are considered to approve a request to transfer venue are a combination of both public and private considerations. Specifically, the Fifth Circuit has explained that the *private*

*interest* factors to be considered are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).

At the same time, the *public interest* factors for consideration are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (brackets in original).  None of the factors are entitled to dispositive weight.  *Id.*

> **B.    The Elements Exist To Transfer To The U.S. District Court For The District Of Hawaii.**

In the event the Court denies DHO's Motion to Dismiss, DHO requests that the lawsuit be transferred pursuant to 28 U.S.C. § 1404(a), to the U.S. District Court for the District of Hawaii. The balancing of equities and the overall "convenience of the parties" weigh heavily in favor of transfer and lead to the conclusion that the interests of justice are best served by a transfer of this lawsuit.

Regarding the private interest factors, DHO and all of its witnesses are located in Hawaii. Allowing DHO witnesses to directly address the plaintiff's allegations in Hawaii will significantly reduce the overall burden and expense to these witnesses and DHO, generally.  Also, the underlying construction project is located at Joint Base Pearl Harbor Hickam, Hawaii.  The transfer would permit easy access to any relevant documents and evidence associated with the underlying project and issues in dispute.

As for the public interest factors, there is no conceivable reason that the federal court in Hawaii could not reasonably adjudicate the current dispute. The massive construction project at the core of the dispute is situated in Hawaii and the issues in dispute are not so unique to Louisiana that a federal court elsewhere would not have the ability to properly and thoughtfully adjudicate the matter.

Beyond the public and private factors supporting a transfer, particularly persuasive is Section 22(a) of the initial draft and unexecuted DHO-LAD purchase order form transmitted to LAD in October 2023.[4] *See, e.g.*, LAD's Fourth Amend. Compl., ¶ 23. The draft purchase order form requires that disputes be adjudicated under the laws of Hawaii and in a court of competent jurisdiction in Hawaii, specifically stating:

> 22.    **MISCELLANEOUS.** (a) All matters relating to the validity, performance, or interpretation of this Purchase Order shall be governed by the law of the State where the Project is located. Any claims or causes of action arising out of or in connection with this Purchase Order shall be commenced in a court of competent jurisdiction located in the State where the Project is located.

*See* Exhibit 1 to DHO's Supplemental Memorandum, p.8 (Dkt. 62-1). The draft purchase order form identifies the "Project" as the drydock construction project at Pearl Harbor Hickam, Hawaii. Specifically, the draft purchase order form states on the first page,

| | | |
|---|---|---|
| PROJECT: | FY23 MCON P-209 Dry Dock 3 Replacement<br>MACC N62742-22-D-1311<br>RFP N62742-2F2-R-1315<br>Task Order N6274223F4007 | ("Project") |
| JOB SITE: | NAVAFC Joint Base Pearl Harbor-Hickam, Hawaii | ("Job Site") |

*See* Exhibit 1 to DHO's Supplemental Memorandum, p.3 (Dkt. 62-1).

While the parties never finalized the purchase order form, the terms of the draft agreement clearly require that the laws of Hawaii be applied, and that "[a]ny claims or causes of action arising out of or in connection with this Purchase Order" be litigated in Hawaii, inclusive of any dispute

---

[4]   DHO continues to dispute that any agreement exists between the parties and therefore reserves all defenses associated therewith.

involving the "validity, performance, or interpretation."  Even a cursory review of the Fourth Amended Complaint reveals that LAD's entire lawsuit is premised on allegations surrounding the "validity, performance, or interpretation" of an alleged agreement between the parties.  The attempt by LAD to rely upon the unexecuted purchase order form establishes LAD's recognition that it would litigate any and all disputes in Hawaii.

Conversely, the strongest tie this lawsuit has to Louisiana revolves around the domicile of LAD's principal – Lee Anthony Dragna.  Beyond the fact that Mr. Dragna is a resident of Louisiana, there are no significant elements to counter DHO's assertion that the "interest of justice" warrants that the matter be transferred to Hawaii.

In the event the Court denies DHO's request to dismiss the lawsuit, DHO respectfully requests that the Court transfer the lawsuit to the U.S. District Court for the District of Hawaii.

## VI.    **CONCLUSION**

For the foregoing reasons, DHO respectfully requests that the Court (a) dismiss the Sixth Cause of Action alleged in Plaintiff LAD Services of Louisiana, LLC's Fourth Amended Complaint, pursuant to Federal Rule 12(b)(6); and (b) dismiss Plaintiff LAD Services of Louisiana, LLC's Fourth Amended Complaint in the entirety, pursuant to Federal Rule 12(b)(2) due to a lack of specific personal jurisdiction over DHO.

In the event the Court denies DHO's request to dismiss the Fourth Amended Complaint in the entirety, DHO requests, pursuant to 28 U.S.C. § 1404, that the Court transfer the lawsuit to the U.S. District Court for the District of Hawaii.

Dated: February 4, 2026.                              Respectfully Submitted,

                                                      **HOLLAND & KNIGHT LLP**

                                                      */s/ L. Bradley Hancock*
                                                      L. Bradley Hancock
                                                      Louisiana Bar No. 27234
                                                      811 Main Street, Suite 2500
                                                      Houston, Texas 77002
                                                      (713) 821-7000- Telephone
                                                      (713) 821-7001- Facsimile
                                                      Brad.Hancock@hklaw.com


                                                      Gregory H. Koger
                                                      *Admitted pro hac*
                                                      800 17th Street, NW
                                                      Washington, D.C. 20006
                                                      (202) 419-2551 – Telephone
                                                      (202) 955-5564 – Facsimile
                                                      Greg.Koger@hklaw.com

                                                      **COUNSEL FOR DEFENDANT
                                                      DRAGADOS/HAWAIIAN
                                                      DREDGING/ORION, JOINT VENTURE**


                         **<u>CERTIFICATE OF SERVICE</u>**

        I hereby certify that on February 4, 2026, a copy of the foregoing was served on all counsel
of record via ECF.


                                                      */s/ L. Bradley Hancock*
                                                      L. Bradley Hancock

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LAD SERVICES OF LOUISIANA, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil No.: 2:24-cv-02446-WBV-DPC** |
| **v.** | ) | |
| | ) | **Judge Wendy B. Vitter** |
| **DRAGADOS/HAWAIIAN** | ) | |
| **DREDGING/ORION, JOINT VENTURE** | ) | **Magistrate Donna Phillips Currault** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DECLARATION OF DWAIN SANDERS IN SUPPORT OF
DEFENDANT DRAGADOS/HAWAIIAN DREDGING/ORION, JOINT VENTURE'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER VENUE**

Dwain Sanders, in support of Defendant Dragados/Hawaiian Dredging/Orion, Joint

Venture's Motion to Dismiss or, In the Alternative, Motion to Transfer Venue, states as follows:

1.    I, Dwain Sanders, hereby affirm that I have personal knowledge of the current dispute between Dragados/Hawaiian Dredging/Orion, Joint Venture ("DHO") and LAD Services of Louisiana, LLC ("LAD"). I also have personal knowledge of the contents of this Declaration.

2.    I am currently employed by DHO as the Marine Manager for the replacement of Dry Dock No. 3 at Joint Base Pearl Harbor Hickam, Hawaii (the "Project").

3.    I was the Marine Manager for the Project during the relevant period of time for the lawsuit (_i.e._, 2022-2023)

4.    I was personally involved in the preliminary discussions between DHO and LAD in 2023, concerning the potential marine dry dock work at the Project.

5.    I was physically present in Hawaii during all of my discussions with LAD.

6.    I did not travel to Louisiana to meet with LAD at any point in time.

1

7. During the preliminary discussions between DHO and LAD in 2023, DHO did not direct LAD to perform any work or services that were eventually used on the Project.

8. At no time during my communications with LAD in 2023 did I represent that LAD had been designated for or guaranteed any subcontract for the Project.

9. At no time during my communications with LAD in 2023 did I represent that DHO awarded any subcontract to LAD for the Project.

10. At no time was LAD directed to mobilize any labor and/or materials at the Project site.

11. At no time in 2023 did DHO issue payment to LAD for any work or services allegedly performed by LAD and relating to the Project.

12. At no time has DHO used any unique or specific design information furnished by LAD during the actual performance of the work on the Project.

13. I am not aware of any proprietary means and methods for marine barge work proposed by LAD that were subsequently transmitted to any other subcontractor for use on the Project.

14. DHO did not enter into any contractual agreement with Crosby Marine Services, Trade Winds Towing, or McDonough Marine Services, in connection with the Project.


I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing are true and correct.


Dated: February 3 , 2026

_____
                                            Dwain Sanders


                                            Printed Name:
Dwain Sanders

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

LAD SERVICES OF LOUISIANA, LLC   )
   )
      Plaintiff,   )   **Civil No.: 2:24-cv-02446-WBV-DPC**
   )
v.   )   **Judge Wendy B. Vitter**
   )
DRAGADOS/HAWAIIAN   )   **Magistrate Donna Phillips Currault**
DREDGING/ORION, JOINT VENTURE   )
   )
      Defendant.   )
_____   )

**DECLARATION OF MANUEL MOREJON IN SUPPORT OF**
**DEFENDANT DRAGADOS/HAWAIIAN DREDGING/ORION, JOINT VENTURE'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**MOTION TO TRANSFER VENUE**

Manuel Morejon (Manuel Ignacio Morejon Lopez), in support of Defendant Dragados/Hawaiian Dredging/Orion, Joint Venture's Motion to Dismiss or, In the Alternative, Motion to Transfer Venue, states as follows:

1.    I, Manuel Morejon, hereby affirm that I have personal knowledge of the current dispute between Dragados/Hawaiian Dredging/Orion, Joint Venture ("DHO") and LAD Services of Louisiana, LLC ("LAD"). I also have personal knowledge of the contents of this Declaration.

2.    I am currently employed by DHO as Deputy Project Manager for the replacement of Dry Dock No. 3 at Joint Base Pearl Harbor Hickam, Hawaii (the "Project").

3.    I became personally involved with the Project in August 2023 as Construction Manager.

4.    I have not traveled to Louisiana for any purposes relating to the Project.

5.    I transmitted DHO's draft purchase order form to LAD *via* e-mail in October 2023.

6.    The purchase order form that I transmitted to LAD for review and comment in October 2023 was a draft of DHO's standard purchase order form for the Project.

7.    The cover e-mail that I prepared and sent transmitting the draft purchase order form to LAD for initial review and comment in October 2023, clearly states that the attached purchase order form is a "Draft."

1

8.    The draft purchase order form transmitted to LAD in October 2023 contemplated the work to be performed at the Project site in Hawaii.

9.    The draft purchase order form transmitted to LAD was done for the purpose of continuing discussions.

10.    The draft purchase order form transmitted to LAD in October 2023 was never intended or represented to be a final proposal or agreement between DHO and LAD.

11.    In addition to e-mail communications, it was verbally discussed with LAD representatives that the draft purchase order form transmitted in October 2023 was an initial draft.

12.    I do not have unilateral authority to enter into subcontract agreements for the Project.  Moreover, I never represented that I held authority to unilaterally enter into subcontract agreements for the Project.

13.    The internal review process for DHO subcontracts on the Project requires review and approval from several individuals involved in the oversight and management of the Project.

14.    After receiving and reviewing the draft purchase order form from DHO, LAD made revisions to the draft terms and transmitted a revised draft purchase order form back to DHO on November 2, 2023.

15.    Among the revisions to the draft purchase order form requested by LAD in November 2023, LAD requested to remove all of the flowdown provisions of the Federal Acquisition Regulation ("FAR") contained in the draft purchase order form transmitted in October 2023.

16.    Shortly after receiving LAD's proposed revisions to the draft purchase order form in November 2023, DHO decided to end discussions with LAD concerning potential work on the Project.

17.    At no time did I believe that DHO and LAD had a binding agreement.

18.    I did not direct LAD to perform any work for the benefit of the Project.

19.    I did not issue any payment to LAD in connection with the Project, and I am not aware of any payment being issued to LAD.

20.    DHO entered into an agreement with Gunderson Marine & Iron to perform the floating dry dock scope of work, involving the marine transport of the prefabricated concrete units forming the dry dock floor.

21.    DHO entered into a separate agreement with Mammoet for the heavy transport scope of work, involving the land transport of the prefabricated concrete units, prior to being loaded on the floating dry dock.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing are true and correct.

Dated: February 3 , 2026

Printed Name: Manuel Morejon